Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4268 | **DATE** | 4/15/2002 |
| **CASE TITLE** | JAMES GALDIKAS ET AL. vs. STUART FAGAN ET AL. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' Motion for Summary Judgment [44-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 16 2002 | 57 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 4/15/2002 date mailed notice | |
| cb | courtroom deputy's initials | BB mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



APR 1 6 2002

JAMES GALDIKAS ET AL. )
)
Plaintiff, ) No. 01 C 4268
)
v. ) Suzanne B. Conlon, Judge
)
STUART FAGAN ET AL. )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

Plaintiffs are a group of 35 former graduate students in the Masters of Social Work ("MSW") program at Governors State University ("GSU"). Plaintiffs sue GSU officers and members of the GSU Board of Trustees (collectively, "defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983") for violation of their Fourteenth Amendment substantive and procedural due process rights (Counts I and IV), conspiracy to prevent the exercise of their First Amendment rights (Count II) and retaliation for exercising their First Amendment rights (Count III). Plaintiffs also brought common law claims for promissory estoppel (Count V) and fraud (Count VI). The court previously dismissed Counts I and IV with prejudice and Counts V and VI without prejudice. The court thereafter declined

1

to exercise supplemental jurisdiction over Counts V and VI. Defendants now move for summary judgment on Counts II and III[1] pursuant to Federal Rule of Civil Procedure 56.[2]

## BACKGROUND

The following facts are undisputed. On December 5, 2000, Fagan met with students to discuss the denial of accreditation candidacy status for the MSW program. Thereafter, Fagan met with Vice President for Administration and Planning Timothy Arr ("Arr") to discuss the possibility that MSW students would attend the board meeting scheduled for December 15, 2000. Fagan and Arr agreed to allow student protestors to attend the meeting. At the board meeting, students, including plaintiffs, were allowed to demonstrate with picket signs. After the meeting, Fagan was approached by students carrying picket signs regarding the MSW accreditation issue. Later that evening, several students carried signs at a GSU holiday party attended by defendants. Plaintiff Sue Ashmus distributed approximately 200 copies of a letter expressing plaintiffs' views on the MSW accreditation issue.

On January 12, 2001, defendants met in executive session to discuss the MSW program. During the meeting, an attorney for GSU summarized his research on the MSW accreditation issue, including the possibility of litigation. Defendants discussed the budgetary impact of various settlement options.

---

[1] Plaintiffs Jennifer Foley, Melissa Sullivan and Anika Todd previously dismissed their claims with prejudice. The remaining plaintiffs with claims under Counts II and III are Maria Andorf, Sherry Anicich, Sue Ashmus, Karen Bartmann, Leianne Biehl, Mary Brice, Thelma Cartwright, Ronald Chew, Dan Davis, Bryan Dunlap, Jerri Ganz, Kathleen Hubeck, Jenny Jankowicz, John LaMantia, Eugenie Marco, Delores Mays, Jerry Pierson, Christy Polaski, Amy Skold, Kathryn Stanley, Benita Uti, Amanda Volin, Rhilender Wilson and Debra Wolleck (collectively, "plaintiffs").

[2] In response to defendants' motion for summary judgment, plaintiffs voluntarily withdrew Counts II and III against defendants Paula Wolff and Joan Porche. The remaining defendants are GSU President Stuart Fagan ("Fagan") and members of the GSU Board of Trustees, Harry Klein, William McGee, Kristi DeLaurentiis, Lorine Samuels, Kathleen Field Orr, Jack Beaupre and Bruce Friefeld (collectively, "Board of Trustees").

2

Fagan and the University Strategic Planning Committee scheduled a town meeting on January 27, 2001 at the GSU Center for Performing Arts Theater to obtain input from alumni regarding the future of GSU. The GSU Alumni Association scheduled a dinner to follow the town meeting, including separate receptions for the various GSU colleges and the Board of Governors. Illinois state senator Debbie Halvorson and Cook County Commissioner Jerry Butler were scheduled to speak at the dinner.

In preparation for the January 27, 2001 event, Department of Public Safety ("DPS") Director Albert Chesser ("Chesser") sent a memorandum addressed to Fagan regarding security. In the January 18, 2001 memorandum, Chesser stated "Campus access will be open and we expect a positive impact in handling the potential protestors and/or disturbances." Plaintiffs' 56.1 Statement of Facts ("Pl. Facts") ¶ 92. On January 25, 2001, Chesser sent a second memorandum addressed to Fagan regarding security, stating "There will not be any protestors allowed with posters/picket signs within the town hall meeting," "No picket signs will be allowed in the receptions," "DPS staff will be assigned to the various college receptions with a concentration on the College of Education (MSW concern)" and "DPS will only allow picket signs outside in the vestibule area, but not to stop any flow of guest attendance." Pl. Facts ¶ 93. Fagan denies receiving both memoranda. Chesser recalls sending the memoranda to his supervisor Arr, rather than to Fagan.

On January 27, 2001, plaintiffs congregated at the front entrance to the Theater; some carried signs. According to plaintiffs, they could not bring their signs into the Theater lobby and they could not access other areas of the building, including the bathrooms or the library. As a result of the restrictions, plaintiffs claim they were unable to attend a previously scheduled meeting with Senator Halvorson. Plaintiffs disbanded at approximately 5:00 p.m.

3

Fagan was present at the January 27, 2001 event. Sometime during the afternoon, Chesser approached Fagan to inform him of the protest. Fagan told Chesser that he "was sympathetic to allowing the students to protest. I was always an advocate of free speech, and the students should be allowed to protest and in no situation whatsoever should there be any physical altercation at all." Defendants' 56.1 Statement of Facts ("Def. Facts") ¶ 10. Friefeld, who was the only member of the Board of Trustees to attend the January 27, 2001 event, did not arrive until 6:15 p.m.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

### II. Section 1983

Plaintiffs claim defendants, in their individual capacities, conspired to prevent them from exercising their First Amendment rights at the January 27, 2001 event. "An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation."

4

*Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). Defendants argue that plaintiffs cannot prove that defendants caused or participated in the alleged constitutional deprivation on January 27, 2001.

Plaintiffs first claim that "it is believed that Fagan actually articulated the order with respect to excluding plaintiffs from the grounds." Response p. 7. In support of their speculative belief, plaintiffs offer the testimony of Christy Polaski, Sue Ashmus and Maria Andorf. Pl. Response to Def. Facts ¶ 10. Polaski testified that two unknown security guards told her that President Fagan closed the building. *Id.* Polaski's testimony, which is offered to prove the truth of the matter asserted, is inadmissible hearsay that cannot be considered on summary judgment. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 741 (7th Cir. 1997).

Nor does the speculative testimony of Ashmus and Andorf constitute evidence that Fagan excluded them from the event. Ashmus testified, "I think I saw Stuart Fagan." Pl. Response to Def. Facts ¶ 10, Ex. 19. Andorf testified, "to my recollection, I think I saw President Fagan in the background talking to the guards." *Id.* at ¶ 10, Ex. 20. Fagan speaking to the security guards during the event does not support a reasonable inference that Fagan exercised his authority to restrict plaintiffs' demonstration. Indeed, Andorf testified that she observed Fagan talking to guards *after* she was excluded from the event for carrying a sign. *Id.* Fagan testified that he spoke to Chesser during the protest, telling him that plaintiffs should be allowed to protest. Based on the undisputed evidence, a reasonable jury could not conclude that Fagan exercised his authority to exclude plaintiffs from the January 27, 2001 event. *See Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999)(plaintiffs' speculation is "not a sufficient defense to a summary judgment motion").

Plaintiffs next claim that defendants' participation in the alleged constitutional violation can be inferred from defendants' discussion of the MSW accreditation issue during several executive sessions. Pl. Resp. to Def. Facts ¶¶ 10-12. However, plaintiffs fail to provide evidence showing that defendants discussed anything other than the MSW accreditation issue, including plaintiffs, plaintiffs' demonstrations or the January 27, 2001 event. "[A] claim of conspiracy cannot survive summary judgment if the allegations are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Admunsen v. Chicago Park District*, 218 F.3d 712, 718 (7th Cir. 2000). A reasonable jury could not infer defendants conspired to suppress plaintiffs' First Amendment rights based on their discussions of the MSW accreditation issue.

Finally, plaintiffs claim that defendants' participation in the alleged constitutional violation can be inferred from Chesser's memoranda to Fagan. Pl. Resp. to Def. Facts ¶¶ 10-12. However, the memoranda show that Chesser, rather than defendants, made the security decisions, including the decision to exclude picket signs. Plaintiffs have not offered any evidence that defendants were personally involved in the decision to restrict plaintiffs to the lobby without picket signs. Summary judgment is appropriate on plaintiffs' Section 1983 claims. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000)("Section 1983 does not allow actions against individuals merely for their supervisory role of others").

## CONCLUSION

Plaintiffs have failed to raise a disputed issue of any material fact. Defendants are entitled to judgment as a matter of law on all claims advanced by plaintiffs.

April 15, 2002

ENTER:

Suzanne B. Conlon
United States District Judge